IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| RUDY STANKO, | ) | |
| | ) | 8:06cv510 |
| Plaintiff, | ) | |
| | ) | MEMORANDUM AND ORDER |
| vs. | ) | |
| | ) | |
| OFFICER SANCHEZ, et al., | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the court on filing no. 43, the Motion for Judgment on the Pleadings filed by the defendants, Officer Sanchez, et al., employees of the Douglas County Correctional Center ("DCCC"); and filing nos. 46 and 54, the Motions to Compel, filing nos. 52 and 54, the Motions for Hearing, and filing no. 52, the Motion to Hold the Defendants in Contempt, all filed by the plaintiff, Rudy Stanko, previously a pretrial detainee at the DCCC. Also before the court is filing no. 50, the Motion to Intervene by Donald Dockery, an inmate at DCCC, and filing no. 51, Mr. Dockery's Motion for Leave to Proceed In Forma Pauperis ("IFP").

Mr. Stanko filed this action while a federal pretrial trial detainee housed by the U.S. Marshal's Service at the DCCC. The plaintiff has since been convicted of two federal offenses, and he has transferred to the custody of the United States Bureau of Prisons. Mr. Stanko's most recent filing originated from the federal prison facility in Leavenworth, Kansas (see filing no. 54 at 3, mailing envelope).

When he filed this action, the plaintiff protested the system by which funds are collected from inmates at the DCCC, the cost of telephone calls there, the withdrawal of funds from inmate trust accounts to pay for damaged property, the recording of inmate telephone calls, restrictions at DCCC on inmate use of the mail, limitations on use of the law library and similar privations. However, now that the plaintiff is no longer incarcerated at the DCCC and is, instead, in the custody of the Bureau of Prisons, all requests for

1

injunctive relief asserted by the plaintiff in his complaint and motions must be denied as moot. I previously entered an Order to that effect on February 14, 2007 (filing no. 41). Because of the difficulties of coordinating filings between inmates at different institutions, and because Mr. Stanko's claims for injunctive relief have become moot, Mr. Dockery's motions to intervene and to proceed IFP (filing nos. 50 and 51) are denied. Mr. Dockery, who remains at DCCC, may bring his own legal action if he so wishes.

As I also explained in filing no. 41, Mr. Stanko seeks compensatory damages for the emotional distress he suffered as a result of the allegedly unconstitutional prison conditions he encountered at the DCCC. However, the remedy of compensatory damages for emotional distress is not available to incarcerated persons such as the plaintiff. 42 U.S.C. § 1997e(e). I also explained that the plaintiff cannot recover punitive damages from the defendants in their official capacity, City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 271 (1981), and that it is exceedingly doubtful that the plaintiff has stated a claim on which relief may be granted for punitive damages against any individual-capacity defendant.

In their Motion for Judgment on the Pleadings, the defendants address the plaintiff's claim that their conduct somehow denied the plaintiff access to the courts and prejudiced Mr. Stanko's self-representation in his federal criminal cases. As the plaintiff has included the same "access to the courts" claim in this case as he asserted in Case No. 8:06cv290, I will repeat here the same preliminary analysis of that issue which I recently entered in Case No. 8:06cv290.

The U.S. Supreme Court has observed that it has never recognized a pro se criminal defendant's right to law library access under the Sixth Amendment. Kane v. Garcia Espitia, 126 S.Ct. 407, 408 (2005). Kane summarily and unanimously reversed a Ninth Circuit decision granting habeas corpus relief to a self-represented defendant who lacked access to a law library while in jail preparing for a state trial. As the Court pointed out in Kane, the decision in Faretta v. California, 422 U.S. 806 (1975), which clearly established a defendant's Sixth Amendment right to self-representation, said "nothing about any specific legal aid that the State owes a pro se criminal defendant." Kane v.

Garcia Espitia, 126 S.Ct. at 408.

At least five U.S. Courts of Appeal have held that when pretrial detainees waive the right to counsel, they also waive any right to access to a law library. At a minimum, any right of access to legal resources owed by anyone to pretrial detainees is satisfied when the presiding courts merely **offer** such detainees appointed counsel or standby counsel. See, e.g., United States v. Byrd, 208 F.3d 592, 593 (7th Cir. 2000) ("when a person isoffered appointed counsel but chooses instead to represent himself, he does not have a right to access to a law library .... The rule is that he has the right to legal help through appointed counsel, and when he declines that help, other alternative rights, like access to a law library, do not spring up."). See also United States v. Cooper, 375 F.3d 1041, 1051-52 (10th Cir. 2004):

> Prisoners have a fundamental constitutional right of access to the courts, and must be provided with "adequate law libraries or adequate assistance from persons trained in the law." Bounds v. Smith, 430 U.S. 817, 828 ... (1977). We have held that availability of law libraries is only one of many constitutionally acceptable methods of assuring meaningful access to the courts, and pretrial detainees are not entitled to law library usage if other available means of access to court exist .... It is well established that provision of legal counsel is a constitutionally acceptable alternative to a prisoner's demand to access a law library. See Lewis v. Casey, 518 U.S. 343, 350-51 ... (1996) .... **When a prisoner voluntarily, knowingly and intelligently waives his right to counsel in a criminal proceeding, he is not entitled to access to a law library or other legal materials** ....

(Emphasis added; citations omitted.) Accord Degrate v. Godwin, 84 F.3d 768, 769 (5th Cir. 1996) (inmate had no constitutional right of access to law library to prepare pro se defense once he rejected assistance of court-appointed counsel); United States v. Sammons, 918 F.2d 592, 602 (6th Cir. 1990) (the offer of court-appointed counsel satisfies the constitutional obligation to provide legal assistance; "by knowingly and intelligently waiving his right to counsel, the appellant also relinquished his access to a law library"); United States v. Chatman, 584 F.2d 1358, 1360 (4th Cir.1978) (any obligation to provide the defendant-detainee access to the courts was satisfied by offering him the assistance of counsel which he declined).

Even the Eighth Circuit has previously expressed skepticism about the Sixth Amendment "right" Mr. Stanko appears to assert. At a minimum, the Eighth Circuit has repeated held that any right of access to legal resources and materials asserted by a pretrial detainee, if such right exists, is wholly satisfied by assistance from standby counsel or similar source provided by the detainee's presiding court. See, e.g., United States v. West, 557 F.2d 151, 152-53 (8th Cir. 1977):

> About a month before his trial, West requested access to a law library, a telephone and a typewriter. Neither of the local facilities for the incarceration of federal prisoners was equipped with a law library. West was not taken to a law library because he was considered both an escapee and a suicide risk. However, the appointed "standby" attorney visited West on seven separate occasions and made himself available to do any research West desired. West refused the offers and insisted that he should do research himself if he was going to be the one to try the case. The attorney did provide West with copies of two cases from the University of Arkansas Law Library that he had requested. Arrangements were made so that West was able to spend an afternoon in the United States Marshal's office conferring with his "standby" counsel and calling potential witnesses on the government F.T.S. (FTS) telephone line. We are unable to agree that West was denied an adequate opportunity to prepare his defense. The Supreme Court has recently held that the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law .... This requirement has been satisfied since West did have opportunity to interview witnesses by telephone and an attorney was made available to obtain legal materials for him.

(Citations omitted.) See also United States v. Knox, 950 F.2d 516, 520 (8th Cir. 1991):

> Knox claims a due process violation because the district court denied him access to a law library. This claim is without merit. Pro se defendants have a right of access to "'adequate law libraries or adequate assistance from persons trained in the law.'"... Knox refused his standby attorney's offer of assistance, saying he wanted to do the legal research himself .... [A]fter Knox threw away legal materials supplied by standby counsel, he was offered the opportunity to use the district court's law library. He refused, without ever telling the district court what he wanted to research and how much time it would take. As West makes clear, the district court was not required to accede to Knox's unsupported, open-ended, unreasonable requests.

4

(Citations omitted.) See also United States v. Kind, 194 F.3d 900, 905 (8th Cir. 1999):

> In this case, Kind rejected society's most fundamental guarantee of a fair trial – the services of appointed counsel and all the resources at counsel's command to prepare and implement the best possible trial defense. After Kind was permitted to represent himself, he complained to the district court about limited access to legal materials at the state institutions where he was being detained. The court offered the assistance of stand-by counsel, and there is nothing in the record suggesting that stand-by counsel refused to assist Kind in his preparation for trial. The record shows that, while Kind was incarcerated in several state facilities prior to trial, he had access to legal materials in at least two of those locations. Kind has totally failed to show that his defense at trial was prejudiced by any lack of legal materials. We have serious doubts whether a pretrial detainee who exercises his constitutional right to represent himself at trial thereby becomes entitled to legal resources over and above what are provided to the general inmate population .... But in any event, it is clear that the district court carefully protected Kind's right to a fair trial after he foolishly decided to represent himself. The right to due process requires no more.

(Citation omitted.)

When he filed his complaint on July 25, 2006, Mr. Stanko had just been convicted by a jury of violating 18 U.S.C. § 922(g)(1) (felon in possession of a firearm) in Case No. 8:05cr93, United States v. Rudolph George Stanko, before Chief Judge Joseph F. Bataillon. As of March 6, 2006, the plaintiff had been remanded to the custody of the U.S. Marshal for violating his terms of pretrial release, and the Marshal placed him at the DCCC. In Case No. 8:05cr93, the plaintiff had ceased representing himself as of January 24, 2006, and retained counsel represented the plaintiff as his attorney in Case No. 8:05cr93 until conclusion of all proceedings in the district court.

The violation of pretrial release in Case No. 8:05cr93 which caused the plaintiff's pretrial detention resulted in an indictment opening Case No. 8:06cr50, United States v. Rudolph George Stanko, in which the plaintiff faced a felony charge of misuse of a social security number, 42 U.S.C. § 408(a)(7)(B). From March 6, 2006 until September 7, 2006, the plaintiff represented himself in Case No. 8:06cr50. On March 6, 2006, Chief Judge Bataillon appointed Joseph Gross as standby counsel. A month later, attorney Roger I.

Roots entered the case as pro bono standby counsel. At all times thereafter through the conclusion of proceedings in the district court, the plaintiff had standby counsel in Case No. 8:06cr50.

In addition to standby counsel in Case No. 8:06cr50, Chief Judge Bataillon entered the following standing order in the case, providing Mr. Stanko with regular and frequent access to the courthouse law library:

> The court finds that the defendant's library access should be increased. The court further finds that there is no local facility that can adequately accommodate the defendant's request for law library access andhis request for access to his legal papers. The court has made arrangements with the U.S. Marshal to transport the defendant to the detention facility of the Roman Hruska Courthouse at least three times per week. The defendant will be given access to all of his legal papers in a holding cell dedicated to his legal papers. The cell will have a desk and writing materials. The defendant may request the U.S. Marshal to provide law books from the court's library. Defendant's requests for law books on hand in the court's library will be provided to the defendant upon the condition that he does not deface, destroy, or damage said books. In the event the defendant fails to properly care for any legal books or materials, the court will withhold further materials.
>
> The court finds that beginning Monday, September 11, 2006, the U.S. Marshal should obtain the defendant's legal papers (approximately one box) from the defendant's current jailer along with other legal materials from his previous attorneys of record and to hold those materials along with appropriate writing materials in a designated detention cell in the Roman Hruska Courthouse. The defendant will be given access to such materials when he is transported to the Courthouse for purposes of legal research at least three days per week. The U.S. Marshal has agreed to provide the defendant photo copies of any filings he may have in discovery or pleadings limited to 200 pages ....

(Filing no. 120, entered on 9/7/06 in Case No. 8:06cr50.)

In subsequent orders, Chief Judge Bataillon instructed the U.S. Marshal's Service to provide Stanko with a box to store his legal materials while conducting research in the federal courthouse, clarified that the Marshal had agreed to transport Stanko to the courthouse each day that a member of the Marshal's staff made a trip to the DCCC (usually daily) but in no event less frequently than three days per week, that Stanko should

store his files and books at the federal courthouse rather than disobey DCCC regulations concerning bringing contraband into the jail, that Stanko had a standing offer to utilize the courthouse library for as much as six hours per day for three to five days per week, that Stanko had permission to keep his legal papers and books in the federal courthouse and return to them each day, that envelopes, postage and photocopies requested by Stanko should be obtained from standby counsel, and that standby counsel would assist Stanko in research. (See, e.g., filing nos. 130, 145, 164, 186, 237 and 255 in Case No. 8:06cr50.)

In the circumstances, whether the plaintiff can rely on the Sixth Amendment as support for his claim regarding access to the courts is questionable. If, instead, he believes that the First and/or Fifth Amendment(s) provides the source for the right he seeks to enforce, his pleadings are not clear in that regard. The Supreme Court held in Bounds v. Smith, 430 U.S. 817, 828 (1977), that, with respect to civil rights suits by *convicted* prisoners, "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law ...." The Supreme Court has since clarified, however, that prisoners who allege denial of access to the courts must show **actual injury** as a constitutional prerequisite. Lewis v. Casey, 518 U.S. 343, 351(1996). Examples of "actual injury" for prospective or existing litigation include missing a filing deadline or being prevented from presenting a claim. Id. at 348. Therefore, if the plaintiff relies on Bounds and Casey, he is going to have to demonstrate that DCCC officials caused him "actual injury" by hindering his efforts to pursue a claim or defense. Id. at 348-51, 354-55. Given the assistance of standby counsel (as well as Judge Bataillon and the U.S. Marshal's Service) in his federal criminal case, it is less than clear what "actual injury" attributable to the DCCC the plaintiff could have suffered in that case.

Because the foregoing requires resort to matters beyond the pleadings, a motion for summary judgment, rather than for judgment on the pleadings, is the proper framework for consideration of the plaintiff's "law library" and monetary extortion claims (e.g., relating to damaged books). However, the defendants are correct that the plaintiff has alleged no basis for a claim premised on 42 U.S.C. § 1981. There are no factual allegations

7

whatsoever which suggest racial animus or intentional discrimination against the plaintiff based on his race.

THEREFORE, IT IS ORDERED:

1. That the plaintiff's pending motions (filing nos. 46, 52 and 54) are denied, except insofar as the defendants may owe the plaintiff any discovery materials under the federal rules, in which event, the defendants shall, of course, comply with the federal rules;

2. That the motion by Donald Dockery to intervene in this action (filing no. 50) is denied; and Mr. Dockery's Motion to Proceed IFP (filing no. 51) is denied;

3. That the defendants' Motion for Judgment on the Pleadings (filing no. 43) is granted in part and denied in part as follows:

(a) Filing no. 43 is granted as to the plaintiff's claim founded on 42 U.S.C. § 1981, and that claim is hereby dismissed;

(b) Filing no. 43 is denied as to the plaintiff's remaining claims, without prejudice to the defendants' right to test those claims in a Motion for Summary Judgment.

DATED this 4th day of April, 2007.

BY THE COURT:

s/ *Richard G. Kopf*
United States District Judge