IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| RUDY STANKO, and similarly situated pre-trial detainees and prisoners, | ) | |
| | ) | |
| Plaintiff, | ) | 8:06CV290 |
| | ) | |
| v. | ) | |
| | ) | |
| ROBERT PATTON, individually and in his official capacity as Director of Douglas County Corrections, aka, Chief Deputy of Corrections (See Inmate Rules and Information Handbook), BARBARA GLAZER, individually and in her official capacity as Education and Recreation Coordinator, JOHN HEATLEY, Chaplin, individually and in his official capacity as an Appointee and Chaplain at Douglas County Correctional Center, JOHN DOES 1X THROUGH 5X, individually and in their official capacity, and JOHN HUBBARD, individually and in his official capacity as Captain and Acting Director of Douglas County Corrections, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | **MEMORANDUM AND ORDER** |
| Defendants. | ) | |
| | ) | |

| | | |
|---|---|---|
| RUDY STANKO, Individually and on behalf of similarly situated prisoners, | ) | |
| | ) | |
| Plaintiff, | ) | 8:06CV510 |
| | ) | |
| v. | ) | |
| | ) | |
| UNKNOWN SANCHEZ, Sargent, Individually and in his Official Capacity as Supervisor, JOHN HUBBARD, Individually and in his Official Capacity as Acting Director, BARB GLAZER, Individually and in her Official Capacity as Scheduling Supervisor, and JOHN DOES 1X THROUGH 6X, Individually and in their Official Capacities, | ) ) ) ) ) ) ) ) ) | **MEMORANDUM AND ORDER** |
| Defendants. | ) | |

Rudy Stanko is a white supremacist. He is also a prolific pro se litigator who makes a habit of suing jail and prison officials when he is charged with a crime. Those facts are central to understanding these related civil cases.

After violating his conditions of pretrial release for failing to allow a weapons search, and while being held in the Douglas County Jail on federal criminal charges regarding illegal gun possession and providing a false social security number, Stanko filed these lawsuits against jail personnel.[1] Pending before me are motions for summary judgment filed by Defendants. I now resolve those motions in favor of Defendants and will enter judgment dismissing both of these cases with prejudice.

As an initial matter, I find and conclude that it is not necessary to address all of the defenses raised by the defendants. In particular, defenses based upon the assertion that Stanko failed to exhaust his administrative remedies, or that Chaplain Heatley is not an employee of the jail and was not acting in concert with the governmental officials for civil rights purposes, are better left for another day and another case. Resolution of those issues would unduly prolong this opinion.

## I. INTRODUCTION

When one searches for Stanko's name in the law books or the court dockets, one quickly finds that he has been involved in numerous civil and criminal matters in various state and federal courts over the last twenty five years. *See, e.g.*, *United States v. Stanko*, 528 F.3d 581 (8th Cir. 2008) (reversing conviction for providing a false social security number and remanding for reconsideration of Stanko's change of venue motion seeking trial in North Platte[2]); *United States v. Stanko*, 491 F.3d 408 (8th Cir. 2007) (affirming conviction for being

---

[1]Stanko is now in the custody of the Bureau of Prisons.

[2]If this Memorandum and Order does nothing else, it should establish that Chief Judge Bataillon's concerns were well-founded when he decided not to move Stanko's criminal cases to North Platte. Having been a judge on this Court since 1987, and having practiced law in the North Platte area for 13 years before that, I know that federal criminal trials in North Platte present serious security issues. Situated on the third floor of an old post office, the North Platte facility is far less secure than the courthouses in Lincoln or Omaha. In fact, to the best of my recollection, I am the only federal judge in the last 20 years to have tried

a prohibited person in possession of a firearm and ammunition[3] ); *Stanko v. Acton*, 296 Mont. 558, 8 P.3d 123 (Mont., 1999) (Table) (affirming dismissal of Stanko's pro se civil suit against Warden of Montana Women's Prison and others that claimed, among other things, that Stanko had been ordained as a religious minister in the Church of the Creator[4] and the defendants wrongly terminated Stanko's visiting privileges; the defendants denied his visiting privileges due to Stanko's criminal record, the belief that he would have a

---

a felony criminal case in North Platte, and that case involved a defendant who was *not* in custody. Respectfully, the idea that Rudy Stanko's criminal cases should have been tried in North Platte, particularly while he was in custody, strikes me as very dangerous.

[3]Regarding the prior felony, Stanko was convicted in 1984 and sentenced to federal prison for violations of the Federal Meat Inspection Act. *See Giove v. Stanko,* 977 F.2d 413, 416-417 (8th Cir. 1992) (discussing the conviction and affirming the district court's finding that Stanko and his wife "possessed the actual intent to defraud Rudy's existing and future creditors through a scheme of transferring property and creating trusts."). In affirming Stanko's conviction for possessing a weapon as a prohibited person, the Court of Appeals described the earlier crime this way:

> In 1984, Cattle King Packing Co., Inc. and Stanko, an officer and shareholder of the corporation, were convicted after a jury trial of multiple counts of violating the FMIA, 21 U.S.C. § 601 et seq., and of conspiracy to violate the FMIA, 18 U.S.C. § 371. *United States v. Cattle King Packing Co.*, 793 F.2d 232 (10th Cir.1986). In its opinion affirming the conviction, the Tenth Circuit Court of Appeals described the substantive counts against the defendants as: "(1) the fraudulent distribution of adulterated meat products; (2) the intentional circumvention of federal law requiring an inspection by a federal meat inspector of all shipments returned to Cattle King by dissatisfied purchasers; and (3) the fraudulent misbranding of meat shipments by stamping on the shipment a false production date." *Id.* at 235.

*United States v. Stanko*, 491 F.3d at 410.

[4]According to a well-regarded legal group that tracks extremists, Stanko was "briefly chosen to lead the neo-Nazi Church of the Creator in 1990 . . . ." Southern Poverty Law Center, *Intelligence Report, The Blotter, Updates on Extremism and the Law*, (Fall 2007) available at http://www.splcenter.org/intel/intelreport/article.jsp?aid=827 (commenting on the Eighth Circuit's decision affirming Stanko's weapons conviction) (last accessed July 15, 2008).

detrimental effect on the orderly operation of the institution, and because of the racially hateful nature of materials he had sent to inmates).

In many of those cases, Stanko represented himself.  Those cases include claims against jail officials.  *See*, *e.g.*, *Stanko v. Rowton,* 303 Mont. 536, 18 P.3d 1031 (Mont., 2000) (affirming dismissal of Stanko's pro se "conditions of confinement" case against Fergus County, Montana jail officials) (table)*; Stanko v. Fairbanks*, 1993 WL 527877 (Neb. App. 1993) (granting summary judgment against Stanko in his suit against the Scotts Bluff County Jail wherein Stanko claimed that after he was placed in jail he was robbed and beaten).

In his capacity as a pro se plaintiff, Stanko has been cited for "steadfastly obstruct[ing]" the efforts of defendants and refusing to follow court orders.  *Stanko v. Chaluoupka*, 474 N.W.2d 470, 471 (Neb. 1991) (affirming dismissal with prejudice of Stanko's pro se civil suit against his former lawyers).  He has also been criticized by a federal judge in another jurisdiction for failing to present his civil rights claims against federal prison officials in a "manageable format." *Stanko v. Davis*, 2008 WL 649121 * 2 (D. Colo., March 10, 2008)  (dismissing complaint).

Having made clear that Rudy Stanko is no novice when it comes to legal matters, and that he has a penchant for presenting his claims in an unmanageable fashion, particularly when it comes to suing jail and prison officials, I turn next to a resolution of his claims in these cases.

## II.  BACKGROUND

The record developed by the defendants in these two related cases is extensive and I take judicial notice of all that evidence for use in both cases.  (Case No. 8:06CV290, Filing Nos. 98 (index of evidence), 101 (index of evidence), 109 (index of evidence), 110 (index of evidence) 111 (index of evidence); Case No. 8:06CV510, Filing No. 106 (index of evidence).)  Due to the size of the record, I will provide general background information and then discuss the material facts (or the lack thereof) as I analyze each of Stanko's claims.

-4-

At the heart of these civil cases are two federal criminal cases. Because an understanding of those federal criminal cases is critical, I take judicial notice of the files of those two criminal cases, although the defendants have put into evidence the especially relevant filings from those cases. One criminal case involved weapons and the other involved a false social security number.

In Case No. 8:05CR93, filed in this court, Stanko was charged with being a prohibited person in possession of a firearm and ammunition and unauthorized transportation of a firearm. (Case No. 8:05CR93, Filing No. 220 (superseding indictment).) That case was assigned to Chief Judge Bataillon.

Stanko was represented by counsel. According to the Court's docket sheet, defense counsel included David Domina, David Nich, Roger Roots, and Timothy Himes. After a hearing on a petition that alleged that Stanko refused to allow a weapons search of his residence or vehicle as required by the pretrial release order, Stanko was placed in the Douglas County Jail because the court found he had violated the release order. (Case No. 8:05CR93, Filing Nos. 226, 227, 230.)

At trial, David Domina and Roger Roots represented Stanko. (Case No. 8:05CR93, Filing No. 308 at CM/ECF p. 2 (transcript).) A jury found Stanko guilty of being a prohibited person in possession of a firearm and ammunition on April 21, 2006. (Case No. 8:05CV93, Filing No. 271.) However, the jury found Stanko not guilty of the transportation charge. (*Id.*) Judgment was entered and Stanko was sentenced to prison on or about August 15, 2006. (Case No. 8:05CR93, Filing No. 300.) His conviction was affirmed by the Court of Appeals, and the formal mandate of the Court of Appeals was filed on October 17, 2007. (Case No. 8:05CR93, Filing No. 329.) Stanko was represented by Roger Roots in this appeal. *See United States v. Stanko*, 491 F.3d at 410 ("Counsel who presented argument on behalf of the appellant was Roger I. Roots . . . .") The Supreme Court denied certiorari in April of 2008. (Case No. 8:05CR93, Filing No. 342.)

In Case No. 8:06CR50, filed in this court, Stanko was charged with providing a false social security number to a bank. (Case No. 8:06CR50, Filing No. 1 (indictment).) That case

-5-

was also assigned to Chief Judge Bataillon.  Because Stanko's conditions of pretrial release had been revoked in the weapons case, he was ordered detained in the social security case. (Case No. 8:06CR50, Filing No. 5.)  On March 6, 2006, Stanko elected to proceed pro se. (*Id.*)

Shortly after Stanko was placed in the Douglas County Jail, he began papering the court file with complaints about his right of "access to the courts."  Chief Judge Bataillon carefully reviewed Stanko's complaints on March 20, 2006 and he found that Stanko's complaints lacked merit:

> Defendant contends that he has only been permitted one hour at the law library in five days.  Defendant demands 20 hours per week in the law library, access to a word processor and Lexis, access to Pacer and electronic filing, and access to a copy machine.  Defendant has made no allegation that a legal claim has been impeded.  There is no freestanding right to a law library at any time a prisoner wants to use it.  *Lewis v. Casey*, 518 U.S. 343, 351-53 (1996). *Defendant clearly has access to the law library.*  He just does not have access as often as he would like.  He is not entitled to a word processor, Lexis, or Pacer/electronic filing from the jail.  Further, he has not offered a copy of the correctional policy on library access, nor has he alleged that the correctional policy on library access violates his constitutional rights.  In addition, he has not alleged that the policy is being unfairly enforced against him when compared to other prisoners.  If defendant wants to present evidence that he is not being permitted adequate access to the library and that he is not receiving paper and pen to draft his legal documents and stamps to mail them, or that the prison policy for access is being violated, he is free to do so.  With that said, the court notes that defendant is representing himself in this criminal case and he must have adequate access to the law library to defend himself. However, based on what has been presented to the court with this motion, the court finds defendant's claims to be without merit and denies this motion.

(Case No. 8:08CR50, Filing No. 18 at CM/ECF pp. 5-6.) (Emphasis added.)

Stanko continued to file numerous motions and Judge Bataillon patiently examined and resolved them.  (*See*, *e.g.*, Case No. 8:06CR50, Filing Nos. 83 (ordering the Clerk to provide Stanko with copies of pleadings), 89 (ordering the government to provide Stanko with discovery); 99 (ordering the United States Marshals Service to serve Stanko's

subpoenas), 114 (ordering that a transcript to be prepared by the Clerk of Court and provided to Stanko).)

After Stanko filed more complaints about access to the courts, on September 7, 2006, Chief Judge Bataillon decided to provide Stanko with extraordinary access to legal materials and also appointed standby counsel to assist Stanko:

> The court finds that the defendant's library access should be increased. The court further finds that there is no local facility that can adequately accommodate the defendant's request for law library access and his request for access to his legal papers. The court has made arrangements with the U.S. Marshal to transport the defendant to the detention facility of the Roman Hruska Courthouse at least three times per week. The defendant will be given access to all of his legal papers in a holding cell dedicated to his legal papers. The cell will have a desk and writing materials. The defendant may request the U.S. Marshal to provide law books from the court's library. Defendant's requests for law books on hand in the court's library will be provided to the defendant upon the condition that he does not deface, destroy, or damage said books. In the event the defendant fails to properly care for any legal books or materials, the court will withhold further materials. The court finds that beginning Monday, September 11, 2006, the U.S. Marshal should obtain the defendant's legal papers (approximately one box) from the defendant's current jailer along with other legal materials from his previous attorneys of record and to hold those materials along with appropriate writing materials in a designated detention cell in the Roman Hruska Courthouse. The defendant will be given access to such materials when he is transported to the Courthouse for purposes of legal research at least three days per week. The U.S. Marshal has agreed to provide the defendant photo copies of any filings he may have in discovery or pleadings limited to 200 pages. The defendant also requested better phone access and release from incarceration in order to investigate the government's allegations. The defendant further requested the expert services of a handwriting expert and an expert concerning the Social Security Administration. The court finds that it will not change the phone policies of the local jails in which the defendant may be housed. It also finds that face-to-face access to potential witnesses by the defendant is problematic considering accusations by the government that the defendant intimidated witnesses in his previous case before this court. The court finds that it is not practicable for the defendant to hire experts while in confinement and with

limited telephone access.  The court finds that the defendant needs assistance by standby counsel for administrative issues such as retaining an investigator, experts, and filing necessary pleadings.  The court hereby appoints standby counsel Joseph Gross[5] to perform such duties for the defendant.  Standby counsel is not required to render legal advice to the defendant unless the defendant requests such services.

(Case No. 8:06CR50, Filing No. 120 at CM/ECF pp. 1-3.)

Thereafter, Stanko filed various motions continuing to complain about legal access. On September 13, 2006, Judge Bataillon entered an order regarding Stanko's "Motion for forty hours a week in Guantanamo Bay Omaha."  Judge Bataillon wrote:

Defendant requests forty hours a week of law room time and that he be able to possess his legal files twenty-four hours a day, seven days a week.  The court will deny defendant's request for forty hours a week of law room time. The court has made arrangements for defendant to use the Hruska library at least three days a week which should be more than adequate for this case.  The U.S. Marshal has agreed to transport the defendant to the Hruska Courthouse every day his staff makes a trip to Douglas County Jail (usually a daily event) but not less than three times per week.  Again, with regard to access to his files, the court notes that defendant must comply with the Douglas County jail policies, but the jail officials must also accommodate defendant's need to represent himself.  The defendant has materials that fill more than one file box. Neither the U.S. Marshal's staff nor the Douglas County Jail staff is required to move a box or boxes of materials each time the defendant is transported to the Hruska Courthouse.  On each trip the defendant my transport a reasonable amount of materials in keeping with jail security policies.  Accordingly, the court will deny this motion.

(Case No. 8:06CR50, Filing No. 130 at CM/ECF pp. 2-3.)

Stanko was undeterred and he kept on filing motions.   On September 25, 2006, Judge Bataillon ruled that Stanko had been placed in the "hole" because he violated jail rules on contraband and that Stanko's rights had not been violated:

---

[5]Mr. Gross is a very experienced and highly regarded criminal defense lawyer who previously served as an Assistant United States Attorney.

Defendant moves this court to address violations of his rights. *He has been placed in the hole for failing to properly follow jail guidelines regarding contraband.* He now complains about the conditions of his incarceration and his cell mate. Although the defendant has a right to defend himself and to obtain access to legal materials, he must still comply with the safety regulations promulgated by the institution. All complaints regarding his cell mate and the conditions of his confinement should be filed through the jail administrative processes. Accordingly, the defendant's motion is denied.

(Case No. 8:06CR50, Filing No. 145 at CM/ECF p. 2.) (Emphasis added.)

Stanko's tsunami of motions continued, but Judge Bataillon got the case ready for trial. On the day of trial, October 23, 2006, Roger Roots entered his appearance as "stand-by counsel to assist Mr. Rudolph George Stanko and Mr. Joe Gross . . . ." (Case No. 8:06CR50, Filing No. 207.)

Mr. Gross and Mr. Roots were in attendance at the trial. (Case No. 8:06CR50, Filing No. 286 at CM/ECF p. 3 (transcript).) At Stanko's request, Mr. Gross remained available for consultation through part of the trial and at Stanko's request Mr. Roots and Stanko divided up the responsibility of actually trying the case. (Case No. 8:06CR50, Filing No. 290 at CM/ECF p.1 (transcript).) Roots played an active part in the trial. For example, he cross-examined a special agent with the social security administration (case no. 8:06CR50, filing no. 291 at CM/ECF p. 11 and following (transcript)) when that witness was called to testify by the government, he conducted the direct examination of that same witness when he was called to testify for Stanko (*id.* at CM/ECF p. 36 and following), and Roots argued a motion for judgment of acquittal (*id.* at CM/ECF p. 23 and following).

Stanko was convicted on October 25, 2006. (Case No. 8:06CR50, Filing No. 226.) Stanko was sentenced to prison and judgment was entered on or about February 8, 2007. (Case No. 8:06CR50, Filing No. 315.) On June 13, 2008, the Court of Appeals reversed Stanko's conviction because the Court of Appeals concluded that Judge Bataillon erred when he was considering Stanko's motion for change of venue. The opinion and related order from the Court of Appeals were filed on June 20, 2008. (Case No. 8:06CR50, Filing Nos.

343, 344.)  As in the weapons case, "Roger Isaac Roots argued" for Stanko before the Court of Appeals.  *United States v. Stanko*, 528 F.3d at 582.

The Douglas County jail records show that Stanko was held there from March 2, 2006 until February 9, 2007.  (Case No. 8:06CV290, Filing No. 111, Attach. 20, Ex. 32 ("Stanko Jail History Screen reflecting when released and reentered DCCC and what room assignments was") at CM/ECF pp. 1 (release date), 4 (entry date).)  Stanko was found to have repeatedly violated jail rules and he was accordingly kept in administrative segregation during much (perhaps most) of this time due to those violations.  (*See*, *e.g.*, Case No. 8:06CV290, Filing No. 111, Attach. 19, Ex. 31 ("Classification Reviews and Lockdown Status"), Attach. 20,  Ex. 32 ("Jail History Screen . . .").)

### III.  RESOLUTION OF CLAIMS

Hoping to bring order to Stanko's chaotic presentations, I will discuss each of the plaintiff's cases and my reasons for granting summary judgment.  I will do so methodically, but briefly.

But first, an observation about Stanko's response to the motions for summary judgment is in order.  In general, Stanko has failed to present his claims and supporting information in an orderly and understandable fashion.  Stanko's presentation in 8:06CV290 is illustrative.  In opposition to the motions for summary judgment, Stanko originally filed an affidavit, an index of evidence, evidence and a brief in 8:06CV290 that total approximately 242 pages. (Case No. 8:06CV290, Filing Nos. 103 (index), 104 (declaration), 105 (brief), 106 (exhibits).)  After that, he submitted an additional 79 pages of material including a response, an affidavit and an index of evidence.  (Case No. 8:06CV290, Filing Nos. 112 (response), 113 (affidavit), 114 (index of evidence).)

Stanko's prolix filings contain numerous deficiencies.  For example, the indexes are not accurate; the affidavits refer to documents without pinpointing where they are in the record; the exhibits are presented without proper authentication; the affidavits frequently state and then redundantly restate arguments and conclusions rather than facts; and some of

-10-

the documents referred to in the affidavits or indexes were not in fact filed with the court clerk as part of the summary judgment record, that is, they are missing. I could, and probably should, strike this whole mess. But given Stanko's pro se status, I reluctantly decline to do so.

Nonetheless, I will not force the defendants to a needless trial because Stanko has presented a lot of paper but few properly authenticated specific facts. After all, the rules mean what they say. *See*, *e.g.*, Fed. R. Civ. P. 56(e)(2) ("When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must--by affidavits or as otherwise provided in this rule--*set out specific facts* showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party.") (Emphasis supplied.)

In a related vein, "'Judges are not like pigs, hunting for truffles buried in briefs.'" *United States v. Stuckey*, 255 F.3d 528, 531 (8th Cir.2001) (quoting *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir.1991). Thus, Stanko will not be allowed to defeat the motions for summary judgment by "throwing mud at the wall and hoping that some of it will stick."

### Claims in 8:06CV290

This case was filed on March 27, 2006. At initial review, I dismissed this case because I thought it was frivolous, but the Eighth Circuit ruled that I was too hasty and reversed. *Stanko v. Patton*, 228 Fed. Appx. 623, 2007 WL 817577 (8th Cir. 2007). When the case returned to me, I allowed Stanko to amend his complaint. That Amended Complaint (filing no. 89) is the operative pleading. It sets forth eight claims for relief. I will first condense and summarize the claims. I will then explain why summary judgment must be granted.

***Claim One.***[6]   Defendants Patton and Hubbard violated Stanko's rights "by celling the Plaintiff with killers, robbers, and psychopaths homosexuals, who assaulted, battered, and raped the White minority Plaintiff" in violation of the Eighth Amendment.

The Eighth Amendment imposes a duty on the part of prison officials to protect prisoners from violence at the hands of other prisoners.  *Farmer v. Brennan*, 511 U.S. 825, 833 (1994).  Under due process principles, pretrial detainees[7] are also entitled to at least as much protection from violence at the hands of other detainees as are convicted inmates.  *See*, *e.g.*, *Perkins v. Grimes*, 161 F.3d 1127, 1130 (8th Cir. 1998) (jailers did not act with deliberate indifference to detainee's safety when they housed him with an inmate who raped him).  In order to prove a violation of the Eighth Amendment, the inmate must show "deliberate indifference" on the part of the corrections employees.  *Id.*  This is a high hurdle.

To show deliberate indifference, the plaintiff must prove both that the official's acts objectively caused a sufficiently serious deprivation and the official had a subjectively culpable state of mind.  *Id.*  In particular, the plaintiff must prove that the corrections official was aware of facts from which an inference could be drawn that a substantial risk of serious harm existed *and* that the official drew that inference.  *Id.*

Because Stanko has wholly failed to adduce *any* admissible proof that Patton or Hubbard (or anyone else) were aware of facts from which an inference could be drawn that Stanko faced a serious risk of harm and that those men actually drew such an inference, summary judgment must be granted. Stanko does not explain or specify when he was assaulted, where he was assaulted, who assaulted him, whether he sought the protection of the defendants or anything else that one typically sees in well-founded "failure to protect"

---

[6]Filing No. 89 at CM/ECF p. 15.

[7]Until he was convicted on the weapons charge, Stanko may properly be characterized as a pretrial detainee.

-12-

cases.[8]  *Compare Nei v. Dooley*, 372 F.3d 1003, 1006-1007 (8th Cir. 2004) (affirming denial of motion for summary judgment against warden and other officials where there was evidence presented by multiple affidavits that a particular named inmate was infected with AIDS, that the inmate actually threatened to infect other inmates, that the inmate was engaging in assaultive behavior towards other inmates and that prison officials failed to respond reasonably to the known risk in violation of the prison's own policy).  In short, this claim finds no support in the record.

> ***Claim Two.***[9]  The defendants violated Stanko's right to practice his religion by not providing "religious meals to the Plaintiff as other Black Muslims and Jewish prisoners obtain their religious meals at [the jail]."

This claim is based upon Stanko's March 8, 2006 "kite" that he sent to the jail officials wherein he alleged that he was a "member and ordained minister of a non-Christian religion" known as "Creativity" or the "Church of the Creator."  (Filing No. 98, Attach. 5, Exhibit 3.)  Stanko indicated that he had been fasting, and he stated that he was about to break his fast and he was in need of "holy meals."  (*Id.*)  These "holy meals" were said to "consist[] of fresh fruits and nuts" and were otherwise known as "a holy fruitarian meal." (*Id.*)

The chaplain, Mr. Heatley, who was employed by Good News Jail & Prison Ministry, a private group that provides chaplains at no cost to jails and prisons throughout the United States, investigated by reading a book that Stanko supplied him.  Based upon the material provided by Stanko, he found the plaintiff's request "met standards on religious grounds."

---

[8]Indeed, so far as I can tell, the only specific grievance Stanko made about fellow prisoners bothering him was an assertion on March 14, 2006 related to his placement in the "hole."  Stanko *did not* claim that he had been assaulted or raped.  Rather, while complaining about legal access issues, Stanko, in passing, mentioned his cell mate, who was described as "a negro fag, who constantly pesters me to suck my cock."  (Filing No. 101, Attach. 3, "Stanko DCC 192.")  Parenthetically, when I quote evidence or arguments made by Stanko, I have made no attempt to correct his spelling or grammar.

[9]Filing No. 89 at CM/ECF p. 15.

(Filing No. 101, Attach. 2 (Heatley Aff. ¶ 6).)  After that, Heatley "checked for compliance with institutional policies." (*Id.*)  He found that Stanko's request "violated security policies." (*Id.*)  As a consequence, Heatley and Monica Beli, separately, denied Stanko's request. (Filing No. 98, Attach. 5, Ex. 3.)  Each of them stated: "Nuts are not available through food service.  Fresh fruit is a security risk and is not allowed in this facility.  Your diet request is denied.  Creativity is not recognized by Nebraska State penal system."  (*Id.*)

In order to assess Stanko's claim that he was denied his right to practice his religion, I have been instructed by the Court of Appeals to determine whether the Church of the Creator is a religion protected by the First Amendment, whether Stanko's belief in eating fresh fruits and nuts was a "sincerely held" belief based upon the teachings of his religion and whether the jail's denial of Stanko's claim to a diet of nuts and fresh fruit was rationally related to the institution's interest in maintaining prison security.  *Stanko v. Patton*, 228 Fed. Appx. 623 at 625, 2007 WL 817577 (citing and quoting *Goff v. Graves*, 362 F.3d 543, 547 (8th Cir. 2004)).  I proceed to that task next.

As the basis for his claim, Stanko has asserted that he subscribes to the "White Man's Bible" (among other tracts) and that his religion "was founded by Pontifex Maximus Benjamin Klassen."  (Filing No. 105 at CM/ECF p. 50 (under the heading "FACTS NOT IN DISPUTE").)  The evidence establishes that the "White Man's Bible" and the organization founded by Klassen are not religious in any legally recognized sense of the word, but are fonts and fronts for white supremacist hate mongers.  (Filing No. 98, Attach. 17, Ex. 13 ("Law Enforcement, Community and Press Briefing Paper"), Attach. 18, Ex. 14 ("Southern Poverty Law Center Paper"), Attach. 19, Ex. 15 ("The White Man's Bible Excerpts").)  Just as Stanko was prohibited from distributing his materials and propounding his racial views in the Montana prison for women because of the hateful non-religious character of those materials and views, *see Stanko v. Acton*, 296 Mont. 558, 8 P.3d 123, Stanko's demands for nuts and fresh fruit, masquerading as a request for "holy meals," was properly denied by Nebraska jail officials because that request was not based upon any religion recognized by the First Amendment.  *See*, *e.g.*, *Church of the Creator, Inc. v. Commissioner of the Internal Revenue Service*, 707 F.2d 491 (11th Cir. 1983) (discussing denial of tax exempt status

-14-

regarding the Church of the Creator in an action brought by Ben Klassen, "Pontifex Maximus," proceeding pro se; affirming dismissal by the tax court).

Even if one prefers to tread lightly on the question of whether Stanko's beliefs equate to the practice of religion, his dietary claims fail because the jail had valid reasons for denying his request for nuts and fresh fruits.[10]   The case law is clear that correctional institutions do not need to specially provide things like nuts and fresh fruits to inmates who demand those items on religious grounds because there are legitimate cost and security justifications for not doing so.  *See, e.g. Ephraim v. Angelone,* 313 F. Supp.2d 569, 578-579 (E.D. Va., 2003) (granting summary judgment for the defendants and holding that a state prison inmate's freedom to exercise his Charismatic Christian religion was not violated when prison declined to completely accommodate his dietary request for such things as fresh fruit and nuts in furtherance of prison's legitimate interest in controlling costs), *aff'd,* 68 Fed. Appx. 460 (4th Cir. 2003), *cert. denied,* 540 U.S.1121 (2004); *Jenkins v. Angelone,* 948 F. Supp. 543, 547-548 & n. 13 (E.D. Va., 1996) (granting summary judgment for the defendants and holding that a state prison inmate's freedom to exercise his African Hebrew Israelite religion was not violated when prison declined to provide such things as fresh fruit due to cost concerns and a security concern that the fruit could be used to make alcohol).

To sum up, I will grant the defendants' motions and deny Stanko's religion claim. Hate is not a religion and jails do not have to provide nuts and fresh fruits to satisfy the whims of haters.[11]

------

[10]Detailed information regarding meals which were provided while Stanko was an inmate and documentation pertinent to dietary considerations is in the record.  (Filing No. 111, Attach. 22, Ex. 34 ("Meals while Stanko was housed at DCCC"), Attach. 23, Ex. 35 ("Current Meals at DCCC") and Attach. 24, Ex. 36 ("Dietician Review of Diet Plans and Menu dated January, 2007").  Note that the jail did provide fruit, but it was apparently not "fresh."  (Filing No. 111, Attach. 22, Ex. 34 at CM/ECF p. 1.)

[11]To the extent that Stanko has made an equal protection claim, there is no evidence to support it.  For example, there is no proof that members of other non-religious groups were accommodated in their dietary requests, but Stanko was denied similar accommodations.

**Claims Three, Four and Six.**[12]  The defendants violated Stanko's rights under the Eighth Amendment because they retaliated against him for the "filing of administrative remedies and legal complaints" by putting him in the "hole" with "less than subsistence diet" and "less than forty-five square feet" of space, by failing to provide at "least one hour per day of outside exercise," and by placing him in the "hole" for more than 15 consecutive days or more than 30 days out any 45-day period.

Our Court of Appeals has succinctly stated the law regarding inmate retaliation claims under the Eighth Amendment and the significant burden an inmate undertakes when making such a claim:

> A prisoner's Eighth Amendment rights are violated if prison officials "impose a disciplinary sanction against a prisoner in retaliation for the prisoner's exercise of his constitutional right." *Goff v. Burton*, 7 F.3d 734, 738 (8th Cir.1993).  A prima facie case of retaliatory discipline requires a showing that: (1) the prisoner exercised a constitutionally protected right; (2) prison officials disciplined the prisoner; and (3) exercising the right was the motivation for the discipline.  *Id*.; *Orebaugh v. Caspari*, 910 F.2d 526, 528 (8th Cir.1990).  The plaintiff-inmate has a heavy evidentiary burden to establish a prima facie case.  *Murphy v. Mo. Dept. of Corr.*, 769 F.2d 502, 503 n. 1 (8th Cir.1985).  Merely alleging that an act was retaliatory is insufficient.  *Benson v. Cady*, 761 F.2d 335, 342 (7th Cir.1985).

*Meuir v. Green County Jail Employees*, 487 F.3d 1115, 1119 (8th Cir. 2007) (affirming grant of summary judgment on retaliation claim).

There is conclusive evidence that Stanko was *not* placed in the "hole" for the "filing of administrative remedies and legal complaints."  At Stanko's request and insistence, Chief Judge Bataillon spent an enormous amount of time refereeing Stanko's battles with jail officials while the judge supervised the two criminal cases in which Stanko was involved. In response to Stanko's motion requesting that the court "address violations of his rights" by the jail officials, the judge specifically found and concluded that Stanko had "been placed

---

[12]Filing No. 89 at CM/ECF pp. 15-17.

-16-

in the hole for failing to properly follow jail guidelines regarding contraband."[13] (Filing 111, Attach. 13, Ex. 25 ("Order in 8:06CR050 dated 9/25/06") at CM/ECF p. 2.)  When, as here, the evidence establishes that the inmate in fact violated the rules as shown by the opinion of an impartial decision maker, there can be no viable claim that the discipline was retaliatory. *See*, *e.g.*, *Hartsfield v. Nichols*, 511 F.3d 826, 831 (8th Cir. 2008) (affirming grant of summary judgment and holding that a report of a disciplinary violation from a correctional officer, even if disputed by the inmate and supported by no other evidence, legally suffices as some evidence upon which to base a prison disciplinary violation, as is sufficient to prevent inmate's success on a § 1983 retaliatory discipline claim, if the violation is found by an impartial decision maker).

Regarding Stanko's complaints about the "hole" and his treatment while he was placed in segregation, the evidence fails to support any claim that the Eighth Amendment was violated.  Among other things, the evidence fails to show that Stanko was denied the "'minimum civilized measures of life's necessity'" as a result of his placement in the "hole." *Rahman X v. Morgan*, 300 F.3d 970, 974 (8th Cir. 2002) (inmate who was kept in segregation for 26 months and who was not allowed outside to exercise for three months did not establish an Eighth Amendment violation) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991).)

For example, evidence from a non-party dietician establishes that Stanko received meals providing 2900 calories per day (e.g., filing no. 111, Attach. 22, Ex. 34 ("Meals while Stanko was housed at DCCC")), and photographs, that were contemporaneously submitted to Judge Bataillon by a Douglas County Deputy Attorney, show a small but pleasant room where Stanko was housed.  (Filing No. 110, Attach. 5, Ex. 10 at CM/ECF pp. 2-8 ("Deputy

---

[13]The record is overflowing with disciplinary reports on Stanko's rule violations including possession of contraband.  (E.g., Filing No. 110, Attach. 3, Ex. 8, at CM/ECF pp. 1-53) (hyperlink unavailable.)

County Attorney Correspondence with Judge Bataillon with photos").)[14]  Moreover, there is no competent evidence that any alleged lack of outside exercise caused Stanko's health problems particularly realizing that he was free to exercise in his cell.

In summary, Stanko's Eighth Amendment retaliation claims have no merit.  He was not retaliated against for exercising his rights, but rather,  he was disciplined for violating jail rules.  (Filing No. 111, Attach. 13, Ex. 25 ("Order in 8:06CR050 dated 9/25/06" at CM/ECF p. 2.)  Moreover, the conditions of his confinement flowing from such discipline were civilized.  He had all of the necessities of life.

> *Claims Five, Seven and Eight*.[15]  The defendants violated the plaintiff's right of "access to the courts" because they did not provide him with daily access to a copy machine, files of his cases, office supplies, a word processor and "lexis nexis" or an appropriate library and because they confiscated his legal files.

There are two parts to a prisoner's right of "access to the courts."  One component is affirmative and the other negative.   In addition, one must consider the question of  "actual injury" when a prisoner claims that his right of "access to the courts" has been violated.  A brief explanation follows.

In certain types of cases, officials who operate prisons or jails have an affirmative constitutional obligation to help prisoners with their legal matters by providing a law library or by providing legal assistance.  *Bounds v. Smith*, 430 U.S. 817, 828 (1977) (holding that the fundamental constitutional right of access to courts requires prison authorities to assist inmates in preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law).

---

[14]*See also* Filing No. 111, Attach. 21, Ex. 33 ("Segregation room dimensions, [photographs] and main floor plans depicting where Stanko was housed while in Administrative Segregation").

[15]Filing No. 89 at CM/ECF pp. 16-17.

Importantly, the affirmative legal obligation is satisfied when the prisoner has been offered or provided a lawyer. *Kane v. Garcia Espitia*, 546 U.S. 9 (2005) (petitioner who elected to proceed pro se on state court charges did not have a clearly established right under federal law to access a law library while he was in jail before trial); *Schrier v. Halford*, 60 F.3d 1309, 1313-1314 (8th Cir. 1995) (the appointment of counsel relieved the state from having to provide access to a law library or its equivalent); *Quam v. Minnehaha County Jail*, 821 F.2d 522, 523 (8th Cir.1987) (plaintiff was afforded meaningful access to courts because he had regular access to his court-appointed attorney during the relevant time period).

The affirmative obligation is limited and pertains only to claims attacking a prison sentence or challenging conditions of confinement or actions seeking to vindicate fundamental constitutional rights. *Lewis v. Casey*, 518 U.S. 343, 354 (1996) (holding that *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims; rather, the tools it requires to be provided are those that inmates need in order to attack their sentences, directly or collaterally, and in order to challenge conditions of confinement); *White v. Kautzky*, 494 F.3d 677, 680 (8th Cir. 2007) (meaningful "access to the courts" for prisoners is the capability to bring actions seeking new trials, release from confinement, or vindication of fundamental civil rights).

Prisons or jails have no obligation to help prisoners pursue or defend ordinary civil matters. *See*, *e.g.*, *Schrier v. Halford*, 60 F.3d at 1313 (inmate was not entitled to affirmative assistance in pursuing civil action alleging legal malpractice; stating that "prisoners do not have a constitutional right to receive affirmative assistance from prison authorities, in the form of access to a law library or appointment of a lawyer or law-trained assistant, to pursue or defend legal actions other than those conforming to the principles recognized in *Bounds*.").

Prisons or jails also have a negative constitutional obligation not to impede a prisoner's litigation efforts no matter the type of litigation. Thus, the "right to meaningful access to the courts ensures that prison [and jail] officials may not erect *unreasonable*

-19-

*barriers* to prevent prisoners from pursuing or defending *all types of legal matters . . . .*" *Schrier*, 60 F.3d at 1313 (emphasis added). That said, prisons or jails may impose "barriers" impairing the right of "access to the courts" (like placing prisoners in segregation) when the reason for doing so is reasonably related to legitimate penological interests. *Lewis v. Casey*, 518 U.S. at 361 (applying the deferential standard of *Turner v. Safley*, 482 U.S. 78 (1987) that a prison regulation impinging on inmates' constitutional rights "is valid if it is reasonably related to legitimate penological interests" in the context of inmates who were segregated for disciplinary reasons and who asserted that their right of "access to the courts" was wrongfully impeded; holding that so long as delays in providing legal materials or legal assistance to prisoners in disciplinary segregation were the product of prison regulations reasonably related to legitimate penological interests, delays of up to 16 days did not violate constitutional right of access to the courts, even if they resulted in actual injury).

If an inmate has established that a prison or jail official failed to live up to an affirmative or negative obligation regarding the prisoner's right of "access to the courts," there is one further hurdle the prisoner must overcome before he or she may recover. With a possible exception not pertinent here, the prisoner must prove that he or she was actually injured. *Lewis v. Casey*, 518 U.S. at 351-353. "To prove actual injury, [a prisoner] must 'demonstrate that a nonfrivolous legal claim had been frustrated or was being impeded.'" *White v. Kautzky,* 494 F.3d at 680 (quoting *Lewis v. Casey*, 518 U.S. at 353).

With the foregoing principles in mind, I turn to Stanko's "access to the courts" claims. For five independent reasons, I find that the defendants' motions for summary judgment must be granted as to those claims.

First, regarding criminal case 8:05CR93, Stanko had counsel and the jury acquitted him on one count of the weapons indictment. Thus, Stanko's right of "access to the courts" was satisfied by the appointment or retention of counsel and there was obviously no impediment put in his way since he won a partial victory before the jury. Furthermore, given the split verdict, Stanko has failed to establish that he suffered any "actual injury." In other words, the split verdict serves to break the necessary causal link between any alleged impediment and any alleged actual injury.

-20-

Second, regarding criminal case 8:06CR50, Stanko had the opportunity for the appointment counsel, but decided to proceed pro se. In addition, Stanko received and accepted the assistance of two standby lawyers, and Stanko, with the help of his lawyers, received a new trial from the Eighth Circuit. Again, Stanko's right of "access to the courts" was satisfied in this criminal case because he was offered but declined counsel, he was provided with standby counsel and he was not actually injured by anything the jail officials did or did not do given that his conviction was overturned by the Court of Appeals.

Third, Stanko had no affirmative right to assistance from jail officials when it comes to his general civil litigation activities. Thus, his assertion that he lost some run-of-the-mill civil cases[16] because of inadequate assistance from the jail is irrelevant.

Fourth, whether for his criminal cases or his general civil cases, the record conclusively establishes that (1) Stanko was provided with legal assistance and law library access and (2) he was *not* substantially impeded regarding his legal matters whether he was in segregation or otherwise. (*See*, *e.g.*, Filing No. 109, Attach. 6, Ex. 5 (detailed and contemporaneous memoranda by jail official listing the extensive legal assistance and numerous law books made available to Stanko by the jail during various times); Filing No. 110, Attach 3, Ex. 8 at CM/ECF p. 17 (contemporaneous report by jail officials showing that Stanko was given copies of, and notary services for, his state court legal papers and allowed to participate in a telephone hearing with a state district judge) (hyperlink unavailable); Filing No. 110, Attach 4, Ex. 9 (orders issued by Judge Bataillon in 8:06CR50 providing, among other things, that (1) Stanko was to be provided with special accommodations including transportation to the federal courthouse by the United States Marshals Service three times a week to do legal research including access to a private room at the courthouse complete with a desk, a chair, copy services, access to law books and Stanko's files and (2) Stanko was to receive the assistance of an experienced former federal prosecutor, Joe Gross, who was appointed as standby counsel to assist Stanko in hiring experts, investigators and filing

---

[16]*See*, *e.g.*, Filing No. 113 at CM/ECF pp. 4-5 ("Stanko's affidavit") for a list of these cases. Parenthetically, Stanko provides little or no explanation about how the alleged jail impediments caused him to lose these cases. Could it be that Stanko lost those cases because they lacked merit? He offers no reason to think otherwise.

pleadings and also to provide other legal assistance if requested by Stanko) (hyperlink unavailable); Filing No. 110, Attach. 5, Ex. 10 at CM/ECF pp. 2-8 (seven color photographs of Stanko's cell, taken while he was in the jail's law library, showing law books, legal materials and case files spread out all over the room; contemporaneously submitted to Judge Bataillon by a Douglas County Deputy Attorney) (hyperlink unavailable); Filing No. 110, Attach 7., Ex. 12 (58 pages of single-spaced log entries establishing that Stanko was given extensive access to the telephone) (hyperlink unavailable); Filing No. 111, Attach. 6, Ex. 18 (entry of appearance of Roger Root as standby counsel "to assist [Stanko] and Mr. Joe Gross" in the criminal case bearing the number 8:06CR50); Case No. 8:06CV510, Filing No. 106, Attach 8, Ex. 8, at CM/ECF pp. 27, 29, 30-31 (contemporaneous records showing, among other things, that Stanko refused to remove metal clips and clasps from his legal files, initially refused to sign a receipt for box of legal files from his lawyer and wrongly moved his legal files from his work space at the federal courthouse to the jail).)   Stanko's uncorroborated assertions and factually unsupported conclusions to the contrary are not enough to get him to a jury.

Fifth, to the extent that Stanko was impeded and injured regarding his right of "access to the courts" by being placed in segregation, the impediment and any related injury were reasonably related to legitimate penological interests and are not compensable.  As noted earlier, Judge Bataillon found that Stanko was placed in the "hole" because he violated prison rules on contraband.  That finding, by an objective decision maker, serves to wipe out Stanko's claim.   There are consequences to violating prison rules and among those consequences are that it may become marginally more difficult for "frequent filers" like Stanko to practice their handiwork while in segregation.  For good reason, the Constitution and this court are indifferent to those self-inflicted wounds.

### *Claims in 8:06CV510*

This case was filed on July 25, 2006.  The Complaint (filing no. 1), is the operative pleading.  It sets forth four claims for relief.  I will condense and summarize the claims.   I will then explain why summary judgment must be granted.

Before doing so, however, it is worth noting that this case is essentially a continuation of 8:06CV290. Stanko filed this case after I dismissed the earlier one. Indeed, Stanko has now filed an unopposed Motion to Consolidate (filing no. 123) these two cases which I will deny as moot. Nevertheless, and as implicitly requested by Stanko, I have considered all the evidence in both cases when resolving the motions for summary judgment.

*Claim One*.[17] The defendant Hubbard, and possibly other defendants, wrongly taped plaintiff's telephone calls "whether privileged, confidential and/or legal" without a warrant or permission from a court.

Stanko has provided no evidence to support his claim.[18] On the other hand, the evidence submitted by the defendants regarding the written policies of the jail as those policies specifically pertain to telephone calls involving lawyers establishes that the jail did not authorize "taping" of such conversations. (Filing 106, Attach. 2, Ex. 2, at CM/ECF pp. 50-51.) In fact, those procedures explicitly state that such calls are "private (not recorded) providing the attorney is a member of a State Bar Association, has been identified to PCS [the telephone provider on contract to provide inmate calling services] and is on PCS's attorney list." (*Id.* at CM/ECF p. 50.) On this record, there is no reason to believe that the defendants violated these written policies. Summary judgment must therefore be granted on this claim.

*Claim Two*.[19] The defendant Hubbard, and possibly other defendants, charged "more than the standard/normal rate or an equal rate" for telephone calls thereby causing the plaintiff difficulty exercising his right of "access to the courts" or his right to counsel.

---

[17]Filing No. 1 at CM/ECF p. 6.

[18]Excepting calls made to lawyers, the Court of Appeals has held that inmates impliedly consent to having their telephone conversations taped when they know a policy of recording all inmate telephone calls exists. *See United States v. Eggleston*, 165 F.3d 624, 626 (8th Cir.1999) (county jail); *United States v. Horr*, 963 F.2d 1124, 1126 (8th Cir.1992) (Bureau of Prisons).

[19]Filing No. 1 at CM/ECF p. 6.

Again, there is simply no evidence to support this claim.  On the contrary, the evidence establishes that an outside vender (PSC) provided telephone services for inmates rather than the defendants.  (Filing 106, Attach. 2, Ex. 2, at CM/ECF p. 50.)  Furthermore, within the area code of the jail (402), wherein the federal court and many of Stanko's lawyers were located, the calls were free.  (*Id.*)  Outside of that area code, the calls were charged at PSC's contract rate plus tax.  (*Id.*) Those calls could be made collect or by prepaid debit card purchased through the commissary.  (*Id.*)  Finally, it is clear that "prisoners are [not] entitled to a specific rate for their telephone calls."  *See, e.g., Johnson v. California*, 207 F.3d 650, 656 (9th Cir. 2000) (allegations that prison wardens conspired with telephone companies to overcharge inmates for telephone service in exchange for kickbacks did not support inmate's federal civil rights claim; there was no authority for proposition that prisoners were entitled to specific rate for telephone calls, and the facts alleged did not support conclusion that rate charged was so exorbitant as to deprive inmates of telephone access altogether).  Summary judgment must be granted on this claim.

**Claim Three.**[20]  The defendants violated the Due Process Clause because they arbitrarily took $65.00 from the plaintiff's account without permission and without a court order.

Because Stanko ripped pages from or otherwise defaced several law books he was disciplined and his inmate account was charged $65.00 for the damages.  On each such occasion, Stanko was offered a hearing by someone other than the accuser and on each occasion he was found responsible for the damage by the hearing officers.[21]  (*See, e.g.,* Filing No. 106, Attach 8, Ex. 8, at CM/ECF pp. 1, 5-6, 11, 13, 14-20.)

The motions for summary judgment will be granted (1) because the disciplinary procedures Stanko underwent provided him with all of the process he was due and (2) because he had additional remedies in state court that were plainly sufficient to protect

---

[20]Filing No. 1 at CM/ECF p. 7.

[21]It is unclear precisely when Stanko's account was charged.  Giving him the benefit of the doubt, I assume that his account was charged before his disciplinary hearings were completed.

-24-

Stanko's due process interest in the $65.00 if the disciplinary procedures were insufficient. *See*, *e.g.*, *Moore v. Plaster*, 266 F.3d 928, 933 (8th Cir. 2001) (prisoner was not entitled to relief under § 1983 where he could use state-law remedies to recover money that was improperly deducted from his prison account); *Mahers v. Halford*, 76 F.3d 951, 954-956 (8th Cir. 1996) (notice and hearing procedures that occurred following a deduction from the inmate's account for restitution obligation satisfied due process); *Rush v. Weber*, 2008 WL 2568264 * 4 (D. Neb., June 25, 2008) (inmate in Nebraska jail was not entitled to relief under § 1983 where he could use Nebraska law to recover money that was improperly deducted from his commissary account); *Sickles v. Campbell County, Kentucky*, 439 F. Supp.2d 751, 755-757 (E.D. Ky. 2006) (grievance procedures available to county jail inmates for challenging fees related to costs of incarceration deducted from their prison canteen accounts were sufficient to satisfy due process and did not require predeprivation hearing before fees were assessed and deducted), *aff'd*, 501 F.3d 726 (6th Cir. 2007).

        **Claim Four.**[22]   The defendants denied Stanko his right "of access to the courts."

        This claim is a rehash of Stanko's "access to the courts" claim discussed above regarding 8:06CV290.   No further discussion is warranted.

## IV.  CONCLUSION

        Summary judgment is granted in both of these cases because Stanko's claims are bogus.   Given Stanko's history, no one should be surprised.

        IT IS ORDERED that:

    1.      The Motions for Summary Judgment (filing nos. 96, 99) in 8:06CV290 are granted.

---

[22]Filing No. 1 at CM/ECF p. 7.

2.      The Motion for Summary Judgment (filing no. 104) in 8:06CV510 is
        granted.

3.      The Motion to Consolidate (filing no. 123) in 8:06CV510 is denied as
        moot.

4.      A separate judgment will be filed in each of these cases.

5.      This Memorandum and Order will be filed in each of these cases.

July 24, 2008.                          BY THE COURT:

                                        s/Richard G. Kopf
                                        United States District Judge